## Case No. 12,974.

### In re SMITH.

[4 Ben. 1; [1] 3 N. B. R. 377 (Quarto, 98); 3 Am. Law T. 7; 1 Am. Law T. Rep. Bankr. 147.]

District Court, N. D. New York. Dec., 1869.

BANKRUPTCY—GENERAL ASSIGNMENT WITHOUT PREFERENCES—INTENTION—PRESUMPTION.

1. The execution by an insolvent of a general assignment of all his property for the benefit of his creditors, without preferences, is an act of bankruptcy.

[Cited in Re Silverman. Case No. 12,855; Globe Ins. Co. v. Cleveland Ins. Co.. Id. 5,486; Boese v. King, 108 U. S. 385, 2 Sup. Ct. 770.]

[Disapproved in Haas v. O'Brien, 66 N. Y. 602.]

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

2. Where the execution of such an assignment is admitted. an adjudication of bankruptcy will be made, even though the respondent denies any intention to defeat or delay the operation of the bankruptcy act [14 Stat. 517], or to hinder his creditors. or to prevent his property from being distributed according to the provisions of the act.

[Cited in Re Silverman, Case No. 12,855; Curran v. Munger, Id. 3,487; Re Marter. Id. 9,143.]

3. Every person of a sound mind is presumed to intend the necessary. natural. or legal consequences of his deliberate act. This legal presumption may be either conclusive or disputable, depending upon the nature of the act and the character of the intent; and when, by law, the consequences must necessarily follow, the presumption is ordinarily conclusive, and cannot be rebutted by any evidence of a want of such intention.

[Cited in Re Silverman, Case No. 12,855; Re Bininger, Id. 1,420; Re Rainsford, Id. 11,-537; Re Jacobs, Id. 7,159.]

[Cited in brief in Stearns v. Gosselin, 58 Vt. 39, 3 Atl. 193.]

In bankruptcy.

HALL, District Judge. The first of the petitions filed in this case alleges as acts of bankruptcy the making of two chattel mortgages, one to Henry Tilton, and the other to the Genesee Valley National Bank, to secure the payment of pre-existing debts, the debtor and mortgagor being at the time insolvent, and executing the same with intent to give a preference to the said mortgagees over the other creditors of the debtor; and, also, the making of a voluntary general assignment of all the property of the debtor, for the benefit of his creditors, he at the time being insolvent, and making such assignment with intent to defeat the operation of the bankrupt act.

[As the same acts of bankruptcy are alleged in the second petition, and with a fuller statement of the several transactions, and as the two petitions have been consolidated, the fuller allegations of acts of bankruptcy contained in the second petition will be taken as those upon which the questions presented in this case must be litigated.] [2]

This petition alleges as acts of bankruptcy: First—That the said Seymour T. Smith, the debtor, on the 4th day of November, 1869, being then insolvent, executed to Henry Tilton a chattel mortgage of all the merchandize, personal property, goods, and chattels in the debtor's store for the express purpose of securing to said Tilton the payment of $1,399.68, due and owing to said Tilton, with intent to give a preference to said Tilton over the other creditors of said Smith. Second—That the said Smith, on the 6th of November, 1869, being insolvent, made to the Genesee Valley National Bank another chattel mortgage, upon substantially the same property, to secure (as expressed in said mortgage) the payment to the said bank of $600, which, as stated in said chattel mortgage, was loaned and advanced to said Smith upon his promissory note, which had become due on the 20th day of September,

---

[2] [From 3 N. B. R. 377 (Quarto, 98).]

1869; and that said mortgage was so made with the intent to give a preference to said bank over the other creditors of said Smith. Third—That on or about the 20th day of September, 1869, the said Smith, being a merchant or trader, fraudulently stopped payment of his commercial paper, and had not resumed within a period of fourteen days; and that among said paper was the note to the Genesee Valley National Bank, mentioned in said chattel mortgage as aforesaid. Fourth—That the said Smith, on the 11th day of November, 1869, being insolvent, and possessed of certain property, rights and credits, as described, made an assignment of all his property, of every name and description, to Moses H. Jewell, with the intent to defeat or delay the operation of the bankruptcy act, and to hinder and delay the creditors of the said Smith, of their just suits, and to prevent his property from being distributed according to the provisions of the said act.

[Smith, the respondent, filed his separate answer to these petitions, but as the answer to the petition secondly above referred to is in substance like the answer to the first petition, so far as it relates to the allegations of acts of bankruptcy contained in the first, only the answer to the petition secondly referred to need be considered.] [2]

The respondent. Smith, by his answer, denies that he committed an act of bankruptcy by the making of the chattel mortgage to Tilton, or that to the Genesee Valley National Bank, as alleged in the petition. He then affirms, in respect to each of such mortgages, that it was executed in good faith to secure an honest indebtedness from the mortgagor to the mortgagee, to the amount secured by such mortgage; and expressly denies that he executed the same with the intent to give a preference to the mortgagee over other creditors. He affirms that he then believed that he had property sufficient to pay all his debts, and intended to do so. He further alleges that both said mortgages were executed by him without any knowledge or belief that he was insolvent, and without intending to commit any fraud on the bankruptcy act. He also denies that he committed a further act of bankruptcy, as alleged in the petition, in that on or about the 20th day of September last past, being a merchant or trader, he fraudulently stopped payment of his commercial paper, but, on the contrary, by reason of being unable to collect his debts, he could not meet such paper, but intended to, and believed he could, meet it soon thereafter; but that such intention was defeated "by circumstances entirely beyond his control;" and he adds an express denial that he had fraudulently stopped payment of his commercial paper. He also denies that he committed an act of bankruptcy in executing the general assignment set forth in the petition, and also expressly denies that "he executed the same with the intent to defeat or

² [From 3 N. B. R. 377 (Quarto, 98).]

delay the operation of the said act, and to hinder or delay the creditors of him, the said Smith, of their just suits, and to prevent his property from being distributed according to the provisions of the said act."

In the conclusion of his answer, the respondent "alleges and affirms that the said chattel mortgages were executed in good faith, as above stated, and because the creditors named therein requested security, and because he believed that he could give them such security without injustice to his other creditors, as he then believed he had the means to pay all his indebtedness, and that said assignment was executed without preferences and for the sole purpose of having his creditors share equally in his property in proportion to their indebtedness."

On these answers being filed, it was insisted by the petitioning creditors that they were entitled to an adjudication of bankruptcy against the respondent, upon such answers, notwithstanding the denials and defensive allegations of the respondent: and in order to present the precise state of the case, a very full statement of the answers has been carefully made. Whether an act of bankruptcy was committed by the respondent, by the execution of either of the chattel mortgages, is a question which will not be discussed. It will be assumed, for the purposes of the present case, and in order to rest the adjudication of bankruptcy upon a different ground, that the existence of the intention necessary to constitute the fact of such execution an act of bankruptcy, is sufficiently denied.

Nor will the case be disposed of upon the ground that the commission of an act of bankruptcy by the debtor, in stopping payment of his commercial paper, and failing to resume payment thereof within fourteen days, is substantially admitted by the answer, although the decision heretofore made in the Case of Wells [Case No. 17,387], is still recognized as the law of this court.

The remaining question relates wholly to the alleged act of bankruptcy by the execution of a voluntary general assignment of all his respondent's property for the benefit of all his creditors, without preference, with the alleged intent to defeat or delay the operation of the bankruptcy act, and to prevent his property from being distributed according to the provisions of that act.

In disposing of this question, it will be considered as though the respondent's denial of an intention to defeat or delay the operation of the bankruptcy act, and to hinder or delay his creditors, and to prevent his property from being distributed according to the provisions of the act, had been made in the disjunctive, and in such form as to fully deny either of the intentions thus imputed to him. The important question will then be, whether, under the admissions of the respondent, the law does not conclusively presume the intention to defeat or delay the operation of the bankruptcy act, and to prevent the property assigned

from being distributed according to the provisions of that act.

The insolvency of the respondent at the time this assignment was executed is not denied, and cannot be controverted. His whole stock in trade, if not the whole of his property, had been transferred or encumbered by two chattel mortgages within the week next preceding the assignment; and the assignment itself necessarily broke up the respondent's business, if this had not already been done by the chattel mortgages; and no creditor, except those he had preferred by his previous action, can receive any of the proceeds of his property, if this assignment be sustained, except as it may be converted into money and distributed by this assignee of the respondent's selection.

The execution of the assignment was the voluntary and deliberate act of the respondent, and there is no pretence that he did not understand its provisions, or that he did not know that the natural and necessary consequences of the execution of the trust thereby created would be to give to the assignee the entire control of the disposition of his property and the pro rata distribution of its proceeds.

If such an assignment be upheld in hostility to the creditors of an insolvent and bankrupt assignor, it necessarily and absolutely defeats the operation of the bankruptcy act. It commits the disposition of the property of the bankrupt and the distribution of the proceeds to an assignee selected by the debtor, and deprives his creditors of the right given them by the bankrupt act to choose an assignee for that purpose; it takes from the courts of bankruptcy the legal supervision and control—the legal and equitable jurisdiction—which they, under that act, are to exercise in respect to such property, and the hostile claims and adverse interests of the bankrupt's creditors, and the marshalling of his assets, as well as in respect to his conduct, property and person; and it also defeats its operation in many other respects, by preventing the property assigned from being brought within the operation and protection of numerous minor provisions of the act, and within the protection of other provisions of great importance, the infractions of which are punished as heinous crimes.

There can be no possible doubt that the execution of the general assignment under the circumstances of this case was an act of bankruptcy; and the only question upon which there can be the slightest doubt is, whether, in the absence of any rebutting proof—and even in the absence of a replication to the respondent's answer—the denial of the intention imputed to him, and which is necessary to constitute the act of bankruptcy, must not prevent an adjudication until the question of intention has been submitted to a jury.

Every person of sound mind is presumed to intend the necessary, natural, or legal consequences of his deliberate act. This legal presumption may be either conclusive or disputable, depending upon the nature of the act and the character of the intention. And when, by law, the consequences must necessarily follow the act done, the presumption is ordinarily conclusive and cannot be rebutted by any evidence of a want of such intention.

In such cases the oath of the defendant to an answer to a bill in chancery, though ordinarily sufficient to countervail the testimony of a single witness, without regard to the actual belief of the judge as to the truth of such testimony, is not sufficient to destroy such legal presumption, even in a case which is brought to a hearing upon bill and answer without the filing of any replication. Even fraud is thus conclusively presumed in certain cases. Cunningham v. Freeborn, 11 Wend. 240; Waterbury v. Sturtevant, 18 Wend. 353; Fiedler v. Day, 2 Sandf. 594; Robinson v. Stewart, 10 N. Y. 189. And see Barney v. Griffin, 2 Comst. [2 N. Y.] 365; Collomb v. Caldwell, 16 N. Y. 486. The doctrine of Cunningham v. Freeborn (which was heard on bill and answer alone), that the admission of facts which are per se fraudulent in law, is as much so and as conclusive upon the defendant as if he had in express terms admitted a fraudulent intent in his answer, and that in such case any subsequent disclaimer of intent will not avail him, was expressly approved in Waterbury v. Sturtevant.

In the former, Mr. Chief Justice Nelson declared, in substance, that it could not be endured, in principle or practice, that the answer of a defendant disclaiming a fraudulent intent, though it admits facts from which such intent is a necessary or legal inference, shall still be conclusive upon this point.

In Fiedler v. Day, the court declared that it was of no consequence that the defendants denied all fraudulent intent, and that such a denial was of no avail when the answer admitted facts conclusively showing the fraud; and in Robinson v. Stewart, it was said to be a familiar rule that a positive denial of fraud in an answer will not prevail against admissions, in the same pleading, of facts which show that the transaction was fraudulent.

General denials of fraud, and of fraudulent intent, in an answer, even when it is plain that such denial should not be made, seem not to be a hard thing for the conscience of the party; and if received as of the same force as the denial of specific allegations of distinct facts, the powers of courts would be too much cramped in the exercise of a salutary jurisdiction. Waterbury v. Sturtevant, ubi supra. And to give to the denial of intent, in cases like the present, the effect insisted upon by the respondent's counsel, would be productive of useless and expensive litigation, of frequent perjury, and gross injustice.

In the present case the answer denies, upon the party's own personal knowledge, and equally in the most absolute terms, the con-

clusion of law that he had committed an act of bankruptcy, the absence of the intent imputed to him, and other allegations of specific facts in respect to which a direct denial, of his own knowledge, may be proper. In like manner he denies that he knew or believed himself to be insolvent when he gave the chattel mortgages before referred to, although the admissions in the answer show that he was legally insolvent, and that he knew the facts upon which the law judged him insolvent. But it must in charity be presumed, and probably in accordance with the fact, that he was ignorant of the legal definition of the term insolvency, and that such ignorance led to such denial.

It may, perhaps, be proper to consider the argument that the provisions of the bankruptcy act should not be so construed as to impute to congress an intention to invalidate a voluntary assignment without preferences, under which the property of an insolvent will be distributed pro rata among his creditors, and, perhaps, more expeditiously and with less expense than it can be done under proceedings in bankruptcy.

That the provisions of the bankruptcy act fully authorize, if they do not absolutely require, such construction, is very clear; and this case furnishes a sufficient reason for the adoption of such provisions. Unless the creditors can proceed in bankruptcy, the chattel mortgages, by which preference has been given to certain creditors of the bankrupt, cannot be set aside on the ground of such unlawful preference, and an insolvent, by giving preference in that mode, and then making a general assignment without preferences, could defeat some of the most salutary provisions of the bankruptcy act.

An adjudication of bankruptcy will therefore be ordered. [And the case referred to Register Husbands for further proceedings.][3]